1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                          CENTRAL DISTRICT OF CALIFORNIA

9

10

11   IRAN HERNANDEZ, on behalf of her  ) Case No. EDCV 07-0022-RC
     minor son RICHARD E. HERNANDEZ,   )
12                                      )
                        Plaintiff,      )
13                                      )
     vs.                                ) MEMORANDUM DECISION AND ORDER
14                                      )
     MICHAEL J. ASTRUE,[1]              )
15   Commissioner of Social Security,   )
                                        )
16                  Defendant.          )
     _____)
17

18        On March 23, 2007, Iran Hernandez ("Hernandez"), on behalf of her

19   minor son Richard E. Hernandez ("Richard" or "plaintiff"), filed a

20   complaint seeking review of the Commissioner's decision denying

21   Richard's application for disability benefits.  On August 13, 2007,

22   the Commissioner answered the complaint, and the parties filed a joint

23   stipulation on October 17, 2007.

24   //

25   //

26   //

27   _____

28        [1]  Pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue
     is substituted as the defendant in the action.

**BACKGROUND**

**I**

On April 2, 2004 (protective filing date), Hernandez filed an application on plaintiff's behalf for disability benefits under the Supplemental Security Income ("SSI") program of Title XVI of the Social Security Act, 42 U.S.C. § 1382(a), claiming plaintiff has been disabled since March 2, 2004, due to attention deficit hyperactivity disorder ("ADHD").[2] A.R. 256-60, 264. The plaintiff's application was initially denied on September 13, 2004, and was again denied on January 27, 2005, following reconsideration. A.R. 235-45. The plaintiff then requested an administrative hearing, which was held on May 2, 2006, before Administrative Law Judge Jay Levine ("the ALJ"). A.R. 246-47, 527-41. On July 27, 2006, the ALJ issued a decision finding plaintiff is not disabled. A.R. 9-18. The plaintiff appealed the decision to the Appeals Council, which denied review on December 11, 2006. A.R. 4-8.

//

//

---

[2] The plaintiff previously applied for SSI disability benefits on May 20, 1997 (protective filing date), and was awarded benefits due to congenital heart defects. A.R. 61-64, 75. However, on February 14, 2002, the Social Security Administration informed plaintiff that, as of February 2002, he no longer qualified for SSI since his health had improved and he was no longer disabled. A.R. 22-26. The plaintiff sought reconsideration of this decision, and reconsideration was denied on June 28, 2002. A.R. 27-50. Plaintiff then requested an administrative hearing, which was held before Administrative Law Judge F. Keith Varni ("ALJ Varni") on October 16, 2002. On November 4, 2002, ALJ Varni issued a decision finding plaintiff was no longer disabled as of February 1, 2002, A.R. 53-54, 223-31, and plaintiff did not appeal ALJ Varni's decision.

                                    II

    Richard, who was born on December 16, 1996, is currently 11 years
old.  A.R. 62, 65, 257.  He attends regular educational classes, and
has some supplemental special education classes.  A.R. 267, 283, 292,
531, 533.


    On March 12, 2004,[3] Rossalyn Richardson, Ph.D., examined
plaintiff at the Riverside County Department of Mental Health and
diagnosed him as having combined type ADHD and determined his Global
Assessment of Functioning ("GAF") was 54.[4]  A.R. 413-14.  Dr.
Richardson found Richard's appearance was neat, his orientation,
affect and speech were within normal limits, his memory was intact,
his mood was euphoric, his intelligence was average, and he had no
psychotic symptoms; however, he had a short attention span, he was
agitated, his judgment was limited, his insight was poor, and his
thoughts were concrete.  A.R. 413.  Dr. Richardson noted Richard had
difficulty with attention, could not sit still for any length of time,
and shifted from activity to activity.  A.R. 414.  On April 1, 2004,
Elizabeth Roberts, M.D., a psychiatrist, examined Richard, diagnosed
him with Oppositional Defiant Disorder ("ODD") and ADHD, determined

_____

    [3]  Although Richard received extensive medical care for his
congenital heart defects, see, e.g., A.R. 142-208, 323-88, 434-
518, he is only challenging the ALJ's assessment of his mental
impairment.

    [4]  A GAF of 54 indicates "[m]oderate symptoms (e.g., flat
affect and circumstantial speech, occasional panic attacks) or
moderate difficulty in social, occupational, or school
functioning (e.g., few friends, conflicts with peers or co-
workers)."  American Psychiatric Association, Diagnostic and
Statistical Manual of Mental Disorders, 34 (4th ed. (Text
Revision) 2000).

his GAF was 46,[5] and prescribed medication for Richard.  A.R. 410-12.
Drs. Roberts and Richardson continued to treat Richard, A.R. 398-09,
and on July 29, 2004, Dr. Roberts found: Richard's thoughts were
clearly organized and concrete; his attitude was uncooperative; there
was evidence of aggressiveness, but no evidence of psychosis; there
was no history of a cognitive impairment, developmental delays or
abnormality, loss of developmental attainments, regression in
behaviors, or problems with the law; Richard was able to maintain a
sustained level of concentration when motivated, adapt to new and
stressful situations, and perform an age appropriate level of self
care.  A.R. 406.  Dr. Roberts also determined Richard could understand
and follow simple instructions; he was defiant and refused to obey his
mother; and he did not interact appropriately with others,
particularly his mother and his teacher.  Id.  Finally, Dr. Roberts
opined Richard's condition was expected to improve and his "behavioral
problems appear to be almost completely as a result of [his] mother's
very ineffective [and] inappropriate parenting style [and he] would
improve if [his] mother's parenting approach improved."  Id.

     On August 12, 2004, Dr. Roberts found Richard's ODD was improving
and he was no longer intentionally annoying his mother, who reported
Richard was more cooperative and less belligerent, but he still needed
constant supervision.  A.R. 403.  However, on September 16, 2004,

_____

     [5]  A GAF of 41-50 indicates "[s]erious symptoms (e.g.,
suicidal ideation, severe obsessional rituals, frequent
shoplifting) or any serious impairment in social, occupational,
or school functioning (e.g. no friends, unable to keep a job)."
American Psychiatric Ass'n, Diagnostic and Statistical Manual of
Mental Disorders, 34 (4th ed. (Text Revision) 2000).

Hernandez complained Richard's behavior had worsened at home, he was
again being defiant, oppositional and belligerent, and he was getting
in trouble at school; thus, Dr. Roberts increased Richard's medication
and advised Hernandez to continue to improve her parenting skills.
A.R. 401.  On September 24, 2004, M.L. Valdes, M.D., examined Richard,
noted Richard's intelligence was average, his memory good, he was
oriented x3, but he was hyperactive, diagnosed Richard with ADHD,
determined Richard's GAF was 50, and changed Richard's medication.
A.R. 400, 402.

     On August 25, 2004, M. Becraft, M.D., a nonexamining
psychiatrist, opined Richard has a severe impairment that does not
meet or medically or functionally equal a listed impairment in that he
has "no limitation" in acquiring and using information and moving
about and manipulating objects, and "less than marked" limitation in
attending and completing tasks, interacting and relating with others,
caring for himself, and health and physical well-being.  A.R. 389-94.

     On September 27, 2004, Richard's second-grade teacher noted he
had problems acquiring and using information in that he needed
additional one-on-one support to accomplish tasks and he has trouble
sitting still and behaving in class or at recess.  A.R. 292-99.  The
teacher found Richard could do several of the same problems at once,
but then needed feedback and further guidance on all tasks.  A.R. 293.
The teacher opined Richard has: a "very serious problem" reading and
comprehending material, understanding and participating in class
discussions, providing organized oral explanations and adequate
descriptions, expressing ideas in written form, applying problem-

solving skills in class discussions, carrying out multi-step
instructions, completing class/homework assignments, completing work
accurately without careless mistakes, and working at a reasonable pace
and finishing on time; a "serious problem" comprehending oral
instructions, understanding school and content vocabulary,
comprehending and doing math problems, learning new material, paying
attention when spoken to directly, focusing long enough to finish an
assigned activity or task, refocusing to task when necessary, waiting
to take turns, changing from one activity to another without being
disruptive, organizing his own things or school materials, working
without distracting himself or others, playing cooperatively with
other children, seeking attention appropriately, expressing anger
appropriately, asking permission appropriately, following rules,
respecting/obeying adults in authority, using language appropriate to
the situation and listener, and taking turns in conversation; and an
"obvious problem" recalling and applying previously learned material,
carrying out single-step instructions, making and keeping friends,
relating experiences and telling stories, introducing and maintaining
relevant and appropriate topics of conversation, interpreting the
meaning of facial expressions, body language, hints, and sarcasm, and
using adequate vocabulary and grammar to express thoughts and ideas in
general everyday conversation.  A.R. 293-95.  However, although
Richard's teacher noted Richard experiences many of these problems
daily or hourly, the teacher indicated no behavior modification
strategies had been necessary other than sitting out recess.  A.R.
294-95.  Richard's teacher further noted that almost all of his speech
can be understood by a familiar listener when the topic of
conversation is known, and about 1/2 to 2/3 of his speech can be

1  understood when the topic is unknown.  A.R. 296.  Finally, Richard's

2  teacher also reported Richard has no problems moving about and

3  manipulating objects or caring for himself.  A.R. 296-97.

4

5      On November 3, 2004, Michael Weiss, M.A., a school psychologist,

6  found Richard eligible for special education assistance since he

7  showed an inability to learn that cannot be explained by intellectual,

8  sensory, or other health factors.  A.R. 416-23.  Dr. Weiss also found

9  Richard was able to comprehend verbal communication and his speech was

10  fully intelligible, though his nonverbal ability was greater than his

11  verbal ability.  A.R. 423.  On November 3, 2005, Richard had his one-

12  year Individualized Educational Program ("IEP") review, which resulted

13  in him receiving 90 minutes of a resource specialist's assistance 4

14  times each week.  A.R. 309-15.  In 2006, Richard's IEP was reduced to

15  75 minutes of a resource specialist's assistance 4x each week.  A.R.

16  316-22.

17

18      On January 25, 2005, nonexamining psychiatrist K. Gregg., M.D.,

19  opined Richard has a severe impairment that does not meet or medically

20  or functionally equal a listed impairment since plaintiff has "no

21  limitation" in moving about and manipulating objects and caring for

22  himself, and he has "less than marked" limitations in acquiring and

23  using information and attending and completing tasks.  A.R. 519-25.

24

25                          **DISCUSSION**

26                             **III**

27      The Court, pursuant to 42 U.S.C. § 405(g), has the authority to

28  review the Commissioner's decision denying a claimant disability

1  benefits to determine if his findings are supported by substantial
2  evidence and whether the Commissioner used the proper legal standards
3  in reaching his decision.  Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194,
4  1198 (9th Cir. 2008); Merrill v. Apfel, 224 F.3d 1083, 1084-85 (9th
5  Cir. 2000).

6

7      A minor is "disabled" within the meaning of the SSI program if he
8  "has a medically determinable physical or mental impairment, which
9  results in marked and severe functional limitations, and which can be
10 expected to result in death or which has lasted or can be expected to
11 last for a continuous period of not less than 12 months."  42 U.S.C. §
12 1382c(a)(3)(C)(i); Merrill, 224 F.3d at 1085.  "The claimant bears the
13 burden of establishing a prima facie case of disability."  Roberts v.
14 Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122
15 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

16

17     The Commissioner has promulgated regulations establishing a
18 three-step sequential evaluation process for the ALJ to follow in a
19 minor's disability case.  20 C.F.R. § 416.924.  In the **First Step**, the
20 ALJ must determine whether the claimant is currently engaged in
21 substantial gainful activity; if so, a finding of nondisability is
22 made and the claim is denied.  20 C.F.R. § 416.924(b).  If the
23 claimant is not currently engaged in substantial gainful activity, in
24 the **Second Step**, the ALJ must determine whether the claimant has a
25 severe medically determinable impairment or combination of
26 impairments; if not, a finding of nondisability is made and the claim
27 is denied.  20 C.F.R. § 416.924(c).  If the claimant has a severe
28 impairment, in the **Third Step**, the ALJ must determine whether the

1    claimant's impairment meets or medically or functionally equals an

2    impairment in the Listing of Impairments ("Listing"), 20 C.F.R. § 404,

3    Subpart P, App. 1, and if the claimant's impairment meets or equals an

4    impairment in the Listing, and meets the durational requirement,

5    disability is presumed and benefits are awarded.  20 C.F.R. §

6    416.924(d).  When the claimant's impairment does not meet or equal a

7    Listing, or does not meet the durational requirement, a finding of

8    nondisability is made and the claim is denied.  20 C.F.R. §

9    416.924(d)(2).

10

11       Applying the three-step sequential evaluation process, the ALJ

12   found plaintiff has not engaged in substantial gainful activity since

13   the alleged onset date.  (Step One).  The ALJ then found plaintiff has

14   a severe impairment.  (Step Two).  Finally, the ALJ concluded

15   plaintiff does not have an impairment or combination of impairments

16   that meet or medically or functionally equal a Listing; therefore,

17   plaintiff is not disabled.  (Step Three).

18

19                                   **IV**

20       The mere diagnosis of an impairment listed in 20 C.F.R. Appendix

21   1, Subpart P, is insufficient, in itself, to support a finding of

22   disability; rather, the claimant also must have the findings shown or

23   symptoms detailed in the listing of that impairment.  20 C.F.R. §

24   416.925(d); Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990); Key

25   v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985).  "To equal a listed

26   impairment, a claimant must establish symptoms, signs and laboratory

27   findings 'at least equal in severity and duration' to the

28   characteristics of a relevant listed impairment, or, if a claimant's

                                       9

impairment is not listed, then to the listed impairment 'most like'
the claimant's impairment." Tackett v. Apfel, 180 F.3d 1094, 1099
(9th Cir. 1999) (citation omitted); Howard v. Barnhart, 341 F.3d 1006,
1012 (9th Cir. 2003).

Even if an impairment does not meet the requirements of, or is
not medically equal to, a Listing, a minor claimant may be disabled if
his impairment or combination of impairments is functionally
equivalent to a Listing. 20 C.F.R. § 416.926a; Augustine v. Astrue,
536 F. Supp. 2d 1147, 1151 (C.D. Cal. 2008); Smith v. Massanari, 139
F. Supp. 2d 1128, 1135 (C.D. Cal. 2001). Functional equivalence is
measured by assessing the claimant's ability to function in terms of
the following six domains, which are "broad areas of functioning
intended to capture all of what a child can or cannot do": (i)
Acquiring and using information; (ii) attending and completing tasks;
(iii) interacting and relating with others; (iv) moving about and
manipulating objects; (v) caring for oneself; and (vi) health and
physical well-being. 20 C.F.R. § 416.926a(b)(1). An impairment or
combination of impairments functionally equals a Listing if it results
in "marked" limitations in two domains of functioning or an "extreme"
limitation in one domain. 20 C.F.R. § 416.926a(d).[6] In evaluating a

_____

[6] A limitation is "marked" if it "interferes seriously with
[the claimant's] ability to independently initiate, sustain, or
complete activities[,]" which "is the equivalent of the
functioning [the Commissioner] would expect to find on
standardized testing with scores that are at least two, but less
than three, standard deviations below the mean." 20 C.F.R. §
416.926a(e)(2)(i). A limitation is "extreme" if it "interferes
very seriously with [the claimant's] ability to independently
initiate, sustain, or complete activities"; however, it "does not
necessarily mean a total lack or loss of ability to function[;]"

claimant's ability to function in each domain, the ALJ should answer
the following questions about whether the claimant's impairments
affect his functioning, and whether the claimant's "activities are
typical of other children [of the same] age who do not have
impairments": (1) What activities can the claimant perform? (2) what
activities is the claimant unable to perform? (3) which of the
claimant's activities are limited or restricted compared to other
children the claimant's age who do not have impairments? (4) where
does the claimant have difficulty with his activities – at home, in
child care, at school, or in the community? (5) does the claimant have
difficulty independently initiating, sustaining, or completing
activities? and (6) what kind of help does the claimant need to do his
activities, how much help is needed, and how often is the help needed?
20 C.F.R. § 416.926a(b)(2)(i)-(vi).

     The ALJ found Richard does not meet or medically or functionally
equal a Listing since his severe mental impairment does not impose any
marked or extreme limitations.  A.R. 13-18.  With regard to the six
functional equivalence domains, the ALJ found Richard has: no greater
than a moderate limitation in acquiring and using information; no
greater than a moderate limitation in attending and completing tasks;
no limitation in interacting and relating with others; no limitation
in moving about and manipulating objects; no limitation in the ability
to care for himself; and no limitation in health and physical well-

---

rather, "[i]t is the equivalent of the functioning [the
Commissioner] would expect to find on standardized testing with
scores that are at least three standard deviations below the
mean."  20 C.F.R. § 416.926a(e)(3)(i).

1  being.  A.R. 14-17.  Plaintiff, however, contends these findings are

2  not supported by substantial evidence because the ALJ failed to

3  properly consider the opinions of his treating mental health care

4  professionals, Drs. Roberts and Richardson.

5

6      The medical opinions of treating physicians are entitled to

7  special weight because the treating physician "is employed to cure and

8  has a greater opportunity to know and observe the patient as an

9  individual."  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987);

10  Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001).  Therefore,

11  the ALJ must provide clear and convincing reasons for rejecting the

12  uncontroverted opinion of a treating physician, Orn v. Astrue, 495

13  F.3d 625, 632 (9th Cir. 2007); Bayliss v. Barnhart, 427 F.3d 1211,

14  1216 (9th Cir. 2005), and "[e]ven if [a] treating doctor's opinion is

15  contradicted by another doctor, the ALJ may not reject this opinion

16  without providing 'specific and legitimate reasons' supported by

17  substantial evidence in the record."  Reddick v. Chater, 157 F.3d 715,

18  725 (9th Cir. 1998); Orn, 495 F.3d at 632.

19

20      Here, plaintiff complains that, although the ALJ addressed the

21  opinions of Drs. Roberts and Richardson, "he did not indicate whether

22  he . . . accepted or rejected [their] findings. . . ."  Jt. Stip. at

23  3:26-4:21.  This complaint is without factual basis.  To the contrary,

24  the ALJ specifically **relied** on the findings of Drs. Roberts and

25  Richardson – as well as other evidence in the record – in finding

26  plaintiff is not disabled.  A.R. 14-18.  For instance, in finding

27  Richard has no more than a moderate limitation in his abilities to

28  acquire and use information and in attending and completing tasks, the

ALJ relied on Dr. Richardson's mental status examination, which found
Richard "neat and fully oriented with euphoric mood, normal affect,
average intelligence, intact memory, short attention and
concentration, agitated psychomotor activity, limited judgment, poor
insight, normal speech, concrete thoughts and no psychotic symptoms."
A.R. 15, 413.   The ALJ also relied on Dr. Roberts's opinions, noting
that Dr. Roberts "diagnosed [Richard] with [ODD] and [ADHD] with a GAF
of 46, despite a normal mental status examination[,]"[7] and started him
on medication, and also stating "Dr. Roberts explained that the
child's 'behavioral problems appear to be almost completely as a
result of [the] mother's very ineffective and inappropriate parenting
style' [and] . . . the child 'would improve if [the] mother's
parenting approach improved.'"   A.R. 15-16 (citation omitted), 406,
410.   Thus, the ALJ properly addressed, considered, and relied on the

//

//

//

_____

[7]   Plaintiff also complains that the ALJ erred in
characterizing his mental status examination by Dr. Roberts as
normal because he was defiant and anxious.   Jt. Stip. at 5:15-25.
Even assuming arguendo the ALJ's characterization of the mental
status examination was erroneous, such error was inconsequential
and completely harmless since the clinical findings of the mental
status examination by Dr. Roberts fully support the ALJ's
conclusion that plaintiff is not disabled.   See Tommasetti v.
Astrue, __ F.3d __, 2008 WL 2762439, *2 (9th Cir. (Cal.)) ("The
court will not reverse an ALJ's decision for harmless error,
which exists when it is clear from the record that the ALJ's
error was inconsequential to the ultimate nondisability
determination." (citations and internal quotation marks
omitted)); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)
("A decision of the ALJ will not be reversed for errors that are
harmless.").

1  opinions of Drs. Roberts and Richardson in determining plaintiff is

2  not disabled.[8] <u>Bayliss</u>, 427 F.3d at 1216.

3

4                                   **ORDER**

5       IT IS ORDERED that: (1) plaintiff's request for relief is denied;

6  and (2) the Commissioner's decision is affirmed, and Judgment shall be

7  entered in favor of defendant.

8

9  DATE: _August 15, 2008_          _/s/ ROSALYN M. CHAPMAN_

10                                  ROSALYN M. CHAPMAN
                                    UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17
   _____

18      [8]  The plaintiff also complains the ALJ erred in assessing

19  Dr. Roberts's opinion because he did not specifically discuss Dr.
    Roberts's determination that he had a GAF of 46 when initially

20  seen.  Jt. Stip. at 4:26-6:4.  While a GAF score may help the ALJ
    assess a claimant's level of impairment, it is not essential to a

21  decision's accuracy, and the ALJ's failure to rely on the GAF
    does not constitute an improper application of the law where, as

22  here, the ALJ specifically discussed all the medical evidence in
    the record, including the opinions of Drs. Richardson and

23  Roberts, and properly relied on that evidence in determining

24  plaintiff is not disabled.  <u>Howard v. Comm'r of Soc. Sec.</u>, 276
    F.3d 235, 241 (6th Cir. 2002); <u>see also</u> <u>Lewis v. Barnhart</u>, 460 F.

25  Supp. 2d 771, 785 (S.D. Tex. 2006) (ALJ did not err in failing to
    discuss consulting examiner's GAF score since "the ALJ fully

26  discussed and analyzed [the] consultative examination, along with

27  all of the evidence of record.").

28  R&R-MDO\07-0022.mdo
    8/15/08